UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
THOMAS HARDY,

                                  Plaintiff,

                - against -

ADAM ROSE RETIREMENT PLAN, and ADAM ROSE,
INDIVIDUALLY, as Plan Administrator,

                                  Defendants.
------------------------------------------------------------------------x

**OPINION AND ORDER**

No. 11-CV-4303 (CS)

Appearances:
William D. Frumkin
Elizabeth E. Hunter
Frumkin & Hunter LLP
White Plains, New York

Howard Schragin
Sapir Schragin LLP
White Plains, New York
*Counsel for Plaintiff*

Leonard I. Spielberg
Harold, Salant, Strassfield & Spielberg
White Plains, New York
*Counsel for Defendants*

Seibel, J.

       Before the Court are Defendants' Motion for Summary Judgment, (Doc. 19), and Plaintiff's Cross-Motion for Summary Judgment, (Doc. 27). For the following reasons, Defendants' Motion is GRANTED and Plaintiff's Motion is DENIED.

**I. BACKGROUND**

       The facts relevant to the disposition of the instant Motions, which are essentially not in dispute, are set forth below.

Plaintiff Thomas Hardy was employed by Defendant Adam Rose at Rose's home, known as "AP Farm," from 1998 until 2006. (P's 56.1 ¶ 1; Ds' 56.1 ¶ 1.)[1] In or around 2003, Plaintiff was promoted to the position of Grounds Manager, a full-time position with benefits such as housing, health insurance, use of a vehicle, and paid vacation. (P's 56.1 ¶¶ 3, 5.)

On April 2, 2005, Rose sent Plaintiff a memorandum stating, in full:

> Next week I will be purchasing you an annuity which will pay you $7,000 per year. This is your income for life and will not be deducted from your salary. It remains your income whether or not you work at AP Farm.
>
> I am retaining ownership of this annuity so that you are prevented from the temptation of selling or liquidating it. As you know, the intent is to start to provide a retirement program and this is part of it.
>
> Because I own the annuity with you as the beneficiary, your new income is tax free. Congratulations.

(*Id.* ¶ 7; Rose Aff. Ex. A.)[2] Around the same time, Rose decided he would purchase two other annuities naming AP Farm's Butler (Joseph Minotto) and Chef (Salvatore Torre), respectively, as beneficiaries, (*see* P's 56.1 ¶¶ 6, 9, 10); Rose chose not to purchase annuities for AP Farm's Gardener (Cristobal Salazar) and Horticulturist (Bruce Blevens), (*see id.* ¶¶ 6, 11). Apparently, the decision to grant the benefit of these annuities to some, but not all, employees was based on

---

[1] "P's 56.1" refers to Plaintiff's Rule 56.1 Statement of Undisputed Material Facts, (Doc. 32), filed in connection with his Motion for Summary Judgment. "Ds' 56.1" refers to Defendants' Local Rule 56.1 Statement of Material Facts not in Dispute, (Doc. 33), filed in connection with their Motion for Summary Judgment. On April 9, 2013, I ordered the parties to submit new responsive statements, as their original responses failed to comply with the Local Civil Rules and/or my Individual Practices. (Doc. 35.) "P's Counter 56.1" will refer to Plaintiff's Counterstatement to Defendants' Local Rule 56.1 Statement, (Doc. 37); "Ds' Counter 56.1" will refer to Defendants' Rule 56.1 Counter-Statement, (Doc. 38). Both were filed pursuant to my April 9, 2013 Order. I will refer only to P's 56.1 and Ds' 56.1 where the material fact has been expressly admitted, or deemed admitted due to the disputing party's failure to cite to admissible evidence that controverts the material fact. *See* Local Civ. R. 56.1(d).

[2] "Rose Aff." refers to the Affidavit in Support of Motion for Summary Judgment, signed by Rose. (Doc. 20.) Plaintiff purported to include a copy of the April 2, 2005 memorandum as Exhibit B to the Declaration of William D. Frumkin, Esq. in Support of Plaintiff's Motion for Summary Judgment ("Frumkin Decl."), (Doc. 30). (*See* Frumkin Decl. ¶ 3.) Exhibit B, however, is a copy of Rose's November 20, 2005 memorandum. In any event, although the parties dispute the legal significance of the memorandum, its contents are undisputed. (*See* P's Counter 56.1 ¶ 2; Ds' Counter 56.1 ¶ 7.)

2

the importance of their position; Rose considered the recipients to be managers and "'therefore they received something special.'" (*Id.* ¶ 10 (quoting Rose Dep. 37).)[3]

On April 20, 2005, Rose purchased the three "lifetime income" annuity plans. (*Id.* ¶¶ 16, 18; Ds' 56.1 ¶ 3.) The annuity agreements named Hardy, Minotto, and Torre, respectively, as "annuitants," which the agreements define as the "Person on whose life expectancy any life contingent Annuity Payments are based." (Frumkin Decl. Ex. D, at 88, 93; *id.* Ex. E, at 110, 115, 129, 134.)[4] Although each of the annuities was to provide $7,000 annually (in monthly installments) to their respective beneficiaries, the single premium (*i.e.*, the cost) of each varied among the three, as it depended on the life expectancy, and thus the age, of the annuitant. (*See id.* Ex. D, at 91 (single premium of $124,146.48 for Hardy, age 39); *id.* Ex. E, at 113 (single premium of $120,582.04 for Torre, age 43); *id.* at 132 (single premium of $122,435.60 for Minotto, age 41).) The monthly payouts apparently commenced on May 20, 2005. (*See id.* Ex. D, at 88; *id.* Ex. E, at 110, 129; Ds' 56.1 ¶ 5.)

On November 20, 2005, Rose sent a memorandum to Hardy, Torre, and Minotto, stating, in full:

> As you know, each of you is now the beneficiary of an annuity which pays you $7,000 annually, tax-free for life. This income is yours regardless of whether or not you continue to be employed at AP Farm.
>
> Although this is intended to be a retirement benefit, the fact that it has already started paying is extremely unusual. In fact, I have never heard of another employer providing a benefit like this one.
>
> As committed when it was given, this benefit will not be deducted from your salary. However, any bonuses or holiday gifts are assumed to be more than covered by your annuity.

---

[3] "Rose Dep." refers to the Examination Before Trial of Adam R. Rose. (Frumkin Decl. Ex. A.)

[4] The page numbers refer to the Bates numbers at the bottom of Exhibits D and E of the Frumkin Decl.

<mark>Case 7:11-cv-04303-CS   Document 39   Filed 07/16/13   Page 4 of 16</mark>

> Any employment situation is to be viewed in its entirety, with all aspects viewed in balance. We hope that you agree that our package is a generous one.

(Rose Aff. Ex. B; Frumkin Decl. Ex. F.) Plaintiff continued to receive monthly payments under the annuity until shortly after his February 2006 resignation, (*see* P's 56.1 ¶ 22; Ds' 56.1 ¶¶ 5, 7), when Rose changed the beneficiary of the annuity to himself, (P's 56.1 ¶ 23; Ds' 56.1 ¶ 8). On May 23, 2006, Rose enacted the Adam R. Rose Retirement Plan. (Ds' 56.1 ¶ 10.)[5]

Plaintiff sued Rose in the New York Supreme Court alleging that the April 2, 2005 and November 20, 2005 memoranda established a binding employment contract (or modification thereof) and that the annuity was a gift. *See Hardy v. Rose*, 876 N.Y.S.2d 118, 120 (2d Dep't 2009).[6] On March 24, 2009, the Appellate Division granted judgment for Rose and held that: (a) he "retained the unilateral right, under the terms of the annuity contract, to change the beneficiary"; (b) "[t]he memoranda do not constitute a binding employment contract based upon past consideration since they were unsigned and the statement with respect to past consideration was vague and imprecise"; and (c) any gift was not complete because Rose "never divested himself of dominion and control over the property." *Id.*

On July 16, 2010, Plaintiff's counsel, litigation counsel here, sent a letter to "Adam Rose Plan Administrator," care of Defendants' litigation counsel here, stating that the letter was an "appeal of the Plan's refusal to provide [Plaintiff] his annuity benefit by removing [Plaintiff] as the named beneficiary of the Plan." (Frumkin Decl. Ex. K, at 1; *see* P's 56.1 ¶ 28.) In the letter,

---

[5] According to Plaintiff, the named Defendant – "Adam Rose Retirement Plan" – refers not to the actual Adam R. Rose Retirement Plan, which came into being after Plaintiff's employment terminated, but to the plan Plaintiff alleges exists based on the annuities and the April 2, 2005 and November 20, 2005 memoranda. (*See* Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and in Further Support of Plaintiff's Motion for Summary Judgment, (Doc. 31), 2.) "Because that Plan is informal and does not have an official plan name, Plaintiff named it the Adam Rose Retirement Plan for purposes of his Complaint." (*Id.*)

[6] Apparently, Plaintiff also brought an ERISA claim under 29 U.S.C. § 1106, which the New York Supreme Court dismissed (because it lacked jurisdiction) and the Appellate Division did not consider on appeal. (*See* Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, (Doc. 28), 6-7.)

Plaintiff's counsel asserted, among other things, a claim under 29 U.S.C. § 1132(a)(1)(B), a provision of the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub. L. No. 93-406, 88 Stat. 829.  (Frumkin Decl. Ex. K, at 1, 3-4.)  Defendants' counsel responded on August 4, 2010 stating "that [Plaintiff's] appeal had been denied and he would not be receiving the annuity benefits to which he was [allegedly] entitled."  (P's 56.1 ¶ 29; *see* Frumkin Decl. Ex. L ("Mr. Hardy's employer was Adam R. Rose; no one else.  Mr. Hardy was never employed by Rose Associates or AP Farm which is not a legal entity.  He was not a participant in any 'Plan,' as Mr. Rose created no Plan.  As you well known, the existence of a 'benefit' (if there was one) does not necessarily mean that a Plan was in existence.").)

Plaintiff commenced this action on June 24, 2011.  (Doc. 1.)  The Complaint alleges that the annuities provided to Plaintiff and others – in combination with the April 2, 2005 and November 20, 2005 memoranda – established a "Retirement program" subject to ERISA, and that Defendants violated 29 U.S.C. § 1132(a)(1)(B) by failing to continue to provide Plaintiff with annuity payments following his resignation. (Complaint, (Doc. 1), ¶¶ 11, 13-16, 21.)  Upon completion of discovery, I gave the parties leave to file cross-motions for summary judgment, which are now before the Court.  The sole question for the Court to decide is whether the annuity was a pension plan governed by ERISA:  if not, then the case must be dismissed; if so, then summary judgment in favor of Plaintiff is warranted.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.  Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1).  Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d

Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

   B. <u>Existence of an ERISA Plan</u>

The parties agree that there are no disputed issues of material fact, and both urge me to decide the case as a matter of law. Whether ERISA applies can be decided by the Court as a matter of law when there is no dispute as to the terms of the ostensible plan. *See Foster v. Bell Atl. Tricon Leasing Corp.*, No. 93-CV-4527, 1994 WL 150830, at *1 (S.D.N.Y. Apr. 20, 1994).

To prevail on a claim under 29 U.S.C. § 1132(a)(1)(B), a plaintiff must establish the existence of an employee benefit plan. *See Bevona v. Serv. Emps. Int'l Union*, No. 05-CV-1157, 2007 WL 1378425, at *11 (S.D.N.Y. May 10, 2007) (citing *Guilbert v. Gardner*, 480 F.3d 140, 146 (2d Cir. 2007)). Here, Plaintiff alleges that the annuity is a "pension plan," which ERISA defines as:

> any plan, fund, or program which . . . is hereafter established or maintained by an employer . . . to the extent that by its express terms or as a result of the surrounding circumstances such plan, fund, or program –
>
>    (i) provides retirement income to employees, or
>
>    (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,
>
> regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C. § 1002(2)(A).[7]  There is no dispute that Plaintiff received payments under the annuity as soon as it was purchased, and as such there was no "deferral of income . . . extending to the termination of covered employment or beyond." *Id.* § 1002(2)(A)(ii).  Accordingly, to the extent that the annuity arrangement constitutes a "plan, fund, or program" at all, it would meet the definition of "pension plan" under ERISA only if it "provides retirement income to employees." *Id.* § 1002(2)(A)(i).

"[A] 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving the benefits." *Grimo v. Blue Cross/Blue Shield*, 34 F.3d 148, 151 (2d Cir. 1994) (alteration in original) (internal quotation marks omitted).  The "touchstone for determining the existence of an ERISA plan is whether a particular agreement creates an ongoing administrative scheme." *Castagna v. Luceno*, No. 09-CV-9332, 2011 WL 1584593, at *19 (S.D.N.Y. Apr. 26, 2011) (internal quotation marks omitted).  "ERISA applies only where such an undertaking or obligation requires the creation of an ongoing administrative program." *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 75 (2d Cir. 1996).  In other words, ERISA governs only "'with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation.'" *Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 565 (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987)).  This is because only "'*plans*'" – as opposed to mere "'*benefits*'" – "'embod[y] a set of administrative practices vulnerable to the burden that would be imposed by a patchwork scheme of regulation,'" from which ERISA was designed to protect employers.  *See*

---

[7] ERISA also covers an "employee welfare benefit plan."  *See* 29 U.S.C. § 1002(1).  Plaintiff does not assert that the annuity constitutes such a plan.

8

*id.* (emphases in original) (quoting *Fort Halifax*, 482 U.S. at 11-12).  Such an "ongoing administrative program" may exist

> (1) where an employer's undertaking requires managerial discretion, that is, where the undertaking could not be fulfilled without ongoing, particularized, administrative analysis of each case; (2) where a reasonable employee would perceive an ongoing commitment by the employer to provide some employee benefits; and (3) where the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria.

*Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 737 (2d Cir. 2001) (citations and internal quotation marks omitted) (citing *Schonholz*, 87 F.3d at 76).[8]  These so-called *Schonholz* factors are not the exclusive factors that may be considered, and no one is determinative.  *See Tischmann*, 145 F.3d at 566.

Not all "plans" are ERISA "pension plans"; "generally only plans designed for the purpose of paying retirement income should be considered to provide retirement income under ERISA."  *Int'l Paper Co. v. Suwyn*, 978 F. Supp. 506, 510 (S.D.N.Y. 1997) (internal quotation marks omitted) (collecting cases); *see Williams v. Wright*, 927 F.2d 1540, 1547 (11th Cir. 1991) (analysis focuses on "whether [the arrangement at issue] was designed *primarily* for the purpose of providing retirement income") (emphasis added).  In determining whether a plan provides retirement income, courts are to consider the "express terms or . . . surrounding circumstances" of such plan.  29 U.S.C. § 1002(2)(A); *see Murphy v. Inexco Oil Co.*, 611 F.2d 570 (5th Cir. 1980) ("The words 'provides retirement income' patently refer only to plans designed for the purpose of paying retirement income whether as a result of their express terms or surrounding

---

[8] Courts in this Circuit apply the analyses of *Fort Halifax*, *Tischmann*, and *Schonholz* – developed in connection with purported "employee welfare benefit plan[s]" – to the question of whether an "employee pension plan" exists. *See, e.g.*, *Gabelman v. Sher*, No. 11-CV-2718, 2012 WL 1004872, at *3-6 (E.D.N.Y. Mar. 23, 2012); *Castagna*, 2011 WL 1584593, at *19-21; *Keire v. Curtis, Morris & Safford, PC.*, No. 98-CV-387, 1999 WL 173571, at *1-2 (S.D.N.Y. Mar. 29, 1999); *Eckardt v. Wiebel Tool Co.*, 965 F. Supp. 357, 362-65 (E.D.N.Y. 1997); *Laverty v. Savoy Indus.*, 954 F. Supp. 86, 89-90 (S.D.N.Y. 1997).

circumstances."). Labor department regulations clarify that bonus plans – *i.e.*, "payments made by an employer to some or all of its employees as bonuses for work performed" – are not subject to ERISA "unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees." 29 C.F.R. § 2510.3-2(c); *see Foster*, 1994 WL 150830, at *2 (applying the so-called "bonus plan exemption").

Thus, in determining whether a plan is "designed primarily for the purpose of providing retirement income," *Williams*, 927 F.2d at 1547, in addition to considering the express terms and/or stated purpose – which are entitled to weight, *see Hahn v. Nat'l Bank, N.A.*, 99 F. Supp. 2d 275, 279 (E.D.N.Y. 2000); *accord Boudinot v. Shrader*, No. 09-CV-10163, 2012 WL 489215, at *6 & n.64 (S.D.N.Y. Feb. 15, 2012) – courts also consider "whether benefits are paid on a current basis before retirement age or are otherwise available periodically during the course of employment, or whether any payments that may, in fact, be made after termination or retirement are merely incidental," *Int'l Paper*, 978 F. Supp. at 511 (citations omitted); *accord Albers v. Guardian Life Ins. Co.*, No. 98-CV-6244, 1999 WL 228367, at *3 (S.D.N.Y. Apr. 19, 1999). Judge Kaplan in *Boudinot* synthesized from case law six factors to consider in determining whether a plan is a "pension plan" subject to ERISA:

> (1) its express purpose, (2) whether the employer maintains discretion over awarding benefits, (3) whether the payments are given on the basis of work performed, (4) whether the payments systematically are deferred until the end of employment, (5) the manner in which the company promoted the plan, and (6) whether penalties were imposed to deter redemption until an employee retired.

*Boudinot*, 2012 WL 489215, at *5.

C. Analysis

1. Existence of a Plan

The April 2, 2005 and November 20, 2005 memoranda, as well as the documents establishing the annuities themselves, (Frumkin Decl. Exs. D, E), clearly set forth "the intended benefits" ($7,000 per year for life), "a class of beneficiaries" (Hardy, Minotto, and Torre), and "the source of financing" (the annuity itself), of the ostensible ERISA plan. *See Grimo*, 34 F.3d at 151 (internal quotation marks omitted). As to whether there are "procedures for receiving the benefits," *id.* (internal quotation marks omitted) – that is, whether the benefits are of such a nature as to require an ongoing administrative program, *see Tischmann*, 145 F.3d at 565 – sufficient to bring the annuities within the ambit of ERISA, I look to the non-exclusive *Schonholz* factors for guidance.

The first *Schonholz* factor weighs strongly against finding an ERISA "plan." In the context of the annuity, absolutely no managerial discretion is required. *See Schonholz*, 87 F.3d at 76. Rose contracted with the annuity company to pay single premiums up front in exchange for its promise to issue monthly payments amounting to $7,000 per year to named beneficiaries. (Frumkin Decl. Ex. D, at 91-92; *id.* Ex. E, at 113-14, 132-33.) After this initial transaction, however, no further managerial involvement was required. The annuity company needed to make no further calculation or determination. Rose needed to do nothing further. Plaintiff's annuity is thus tantamount to a one-off transaction, not unlike the single, lump-sum benefit that the Supreme Court in *Fort Halifax* held was insufficient to establish an ERISA plan. *See Fort Halifax,* 482 U.S. at 12 ("The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation."). Though the annuity company promised to make monthly payments to a named beneficiary for life, "little [or no] administrative oversight [was] necessary to administer [the annuity] because

there [was] nothing discretionary about the timing, form, or amount of the payments." *Gabelman*, 2012 WL 1004872, at *3-4 (holding that payouts "automatically triggered by the one-time occurrence of specific events . . . which are objectively verifiable and explicitly spelled out" require no managerial discretion); *see Tinoco v. Marine Chartering Co.*, 311 F.3d 617, 623 (5th Cir. 2002) ("[W]riting a check each month is hardly an administrative scheme.") (citing *Fort Halifax*, 482 U.S. at 12). In other words, even if the nature of the benefits requires some calculation – for example, as here, where the initial values of the lifetime annuities were cued off of the ages of the annuitants – their disbursement will not amount to an ERISA plan unless it requires the "establishment of a uniform administrative scheme." *See James v. Fleet/Norstar Fin. Grp., Inc.*, 992 F.2d 463, 467 (2d Cir. 1993) (alteration and internal quotation marks omitted); *see also Nowak v. Int'l Fund Servs. (N.A.), L.L.C.*, No. 09-CV-5103, 2009 WL 2432715, at *2 (S.D.N.Y. Aug. 7, 2009) (no ongoing administrative scheme where only "simple arithmetic calculations" needed to ascertain benefit amount, with no "discretion in the amount of benefits"). Indeed, even though the annuities require some monitoring – for example, to determine whether their respective beneficiary is still living – "these are routine ministerial determinations of objective fact that are not subject to employer abuse and, therefore, neither implicate employer discretion nor require an administrative scheme." *Gabelman*, 2012 WL 1004872, at *4.

The third *Schonholz* factor also weighs strongly against finding an ERISA "plan." No individualized analysis of an employee's individual circumstances is required. Once Rose decided to purchase the annuities for Hardy, Minotto, and Torre (and the annuity company determined the initial premiums based on their respective ages), no further analysis (let alone individualized analysis) was required, and nothing about the circumstances of any employee's

termination would change the payout calculation. *See id.* at *5 (no ongoing evaluation required because "the payments – once triggered – mechanically followed a predetermined schedule of installments in set amounts"). Indeed, "[t]here is no evidence of any criteria which would be applied to determine whether benefits should be awarded." *Eckardt*, 965 F. Supp. at 363. Rather, once Rose purchased the annuities, the beneficiaries received the monthly payments, with no administrative oversight or individualized determination necessary. By contrast, if an undertaking were to require "examin[ing] the circumstances of each covered employee's termination . . . to determine whether it was 'for cause,'" that would weigh in favor of finding an ERISA plan. *Tischmann*, 145 F.3d at 567.

The second *Schonholz* factor weighs in favor of finding an ERISA "plan." The undisputed facts of record make clear that "a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits." *Schonholz*, 87 F.3d at 76 (internal quotation marks omitted). The April 2, 2005 and November 20, 2005 memoranda state unequivocally that Hardy would receive $7,000 annually for life whether or not employed by Rose. (Rose Aff. Ex. A ("This is your income for life and will not be deducted from your salary. It remains your income whether or not you work at AP Farm."); *id.* Ex. B ("As you know, each of you is now the beneficiary of an annuity which pays you $7,000 annually, tax-free for life. This income is yours regardless of whether or not you continue to be employed at AP Farm.").) Because no one factor is determinative, however, and because the undisputed evidence shows that the annuities "simply do[] not require the kind of 'ongoing, particularized, administrative, discretionary analysis' characteristic of an ERISA plan," *Gabelman*, 2012 WL 1004872, at *6 (quoting *James*, 992 F.2d at 468), I find that the annuities do not constitute an ERISA plan. In

the absence of a plan subject to ERISA, Plaintiff cannot succeed on his claim under 29 U.S.C. § 1132(a)(1)(B), and therefore his case must be dismissed.

      2. <u>Purpose of a Plan</u>

Even assuming that the annuities constitute a "plan" under ERISA, I would still dismiss Plaintiff's case because the ostensible "plan" was not "designed primarily for the purpose of providing retirement income," *Williams*, 927 F.2d at 1547, and is therefore not an ERISA "pension plan" under 29 U.S.C. § 1002(2)(A).  It is true that the April 2, 2005 and November 20, 2005 memoranda indicate that the purpose of the annuities were, at least in part, to provide retirement income, (Rose Aff. Ex. A ("As you know, the intent is to start to provide a retirement program and *this is part of it*.") (emphasis added); *id.* Ex. B ("Although *this is intended to be a retirement benefit*, the fact that it has already started paying is extremely unusual.") (emphasis added)), and I accord these statements due weight, *see Boudinot*, 2012 WL 489215, at *6 & n.64; *Hahn*, 99 F. Supp. 2d at 279.  Cutting strongly the other way, however, is the fact that the annuities started paying immediately, before the beneficiaries' actual or even imminent retirement.  *See Int'l Paper*, 978 F. Supp. at 511 (benefits "paid on a current basis before retirement age" or "otherwise available periodically during the course of employment" militates against finding that an ERISA pension plan exists) (citing, among others, *Murphy*, 611 F.2d at 575).  Indeed, because the annuities provided current income, it is hard to fathom how they could be regarded as "primarily" for retirement.  Further weighing against finding an ERISA plan is the stated purpose that the annuities would be paid in lieu of bonuses or other holiday gifts.  (Rose Aff. Ex. B ("[A]ny bonuses or holiday gifts are assumed to be more than covered by your annuity.").)  Bonus plans are specifically excluded from coverage under ERISA unless they are for the purpose of "provid[ing] retirement income to employees."  *See* 29 C.F.R. § 2510.3-2(c).  Thus, notwithstanding the reference to the annuities as a "retirement benefit" in the memoranda,

"[i]n the absence of any evidence that the plan was designed 'primarily for the purpose of providing retirement income,'" *Int'l Paper*, 978 F. Supp. at 511 (quoting *Williams*, 927 F.2d at 1547), if there were a plan, I would find that it does not fall within the definition of a "pension plan" under ERISA.

Applying the *Boudinot* factors supports this conclusion. *See Boudinot*, 2012 WL 489215, at *5. The memoranda indicate that the annuities were to provide both current and retirement income and were given in lieu of bonuses or holiday gifts. Thus, the express purpose factor cuts both ways. As to whether the employer maintained discretion to award the benefits, Rose had complete discretion whether to award the annuities in the first place, and, even after Plaintiff was named the beneficiary, Rose apparently retained discretion to withdraw the benefit. *See Hardy*, 76 N.Y.S.2d at 120. This factor thus weighs against finding an ERISA "pension plan." As to whether payments were made on the basis of work performed, this factor weighs in favor of finding an ERISA "pension plan," given that the benefit paid was a constant amount ($7,000 per year), and did not depend on work performed. There was no systematic deferral of payments until the end of employment (indeed, to the contrary, payments commenced immediately), and thus this factor weighs against finding an ERISA "pension plan." There is no evidence in the record that Rose promoted to his employees the possibility that they might receive an annuity, weighing against finding an ERISA "pension plan." Finally, there were no penalties imposed to deter redemption until retirement, weighing against finding an ERISA "pension plan." Thus, on balance, the *Boudinot* factors counsel against finding an ERISA "pension plan."[9]

---

[9] In his Affidavit, Rose affirms that he and his partner, who live at AP Farm, "conduct no business for profit there," and "sell nothing [they] grow and . . . are not involved in commerce in any way," (Rose Aff. ¶ 1), suggesting the argument that Rose is not subject to ERISA because he is not an "employer engaged in commerce or in any industry or activity affecting commerce," 29 U.S.C. § 1003(a)(1). Defendants do not, however, make this argument in their brief, and I need not reach it in light of the disposition of the case. In any event, although I need not and do not reach any definitive conclusion on the matter, the argument appears to be without merit, as ERISA reflects Congress' intent to regulate within the full sweep of its constitutional authority under the Commerce Clause, *see*

### III. CONCLUSION

Because the undisputed facts of record establish that the annuity at issue here is not subject to ERISA, Plaintiff cannot succeed on his 29 U.S.C. § 1132(a)(1)(B) claim. Accordingly, Plaintiff's Motion for Summary Judgment is DENIED, Defendants' Motion for Summary Judgment is GRANTED, and the case is dismissed. The Clerk of Court is directed to terminate the pending Motions, (Docs. 19, 27), enter judgment for Defendants, and close the case.

**SO ORDERED.**

Dated: July 16, 2013
White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

*Motor Valet, Inc. v. Guardian Life Ins. Co.*, No. 08-CV-477, 2009 WL 113479, at *2 (N.D.N.Y. Jan. 15, 2009) (citing *Winterrowd v. David Freedman & Co.*, 724 F.2d 823, 825 (9th Cir. 1984)), and Congress' authority under the Commerce Clause reaches agriculture, even that producing goods only for personal consumption, *see Wickard v. Filburn*, 317 U.S. 111, 128-29 (1942).

Defendants also argue that collateral estoppel applies against Plaintiff here based on the Appellate Division's decision in *Hardy*, 876 N.Y.S.2d 118. (*See* Defendants' Memorandum of Law in Support of Motion for Summary Judgment, (Doc. 21), 14-16.) In view of my decision herein, I need not decide what, if any, collateral estoppel effect the Appellate Division's decision has on the parties here.